FILED
2026 Sep-02 AM 08:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **LATOYA JOHNSON (formerly known as Latoya Render),** | ) | |
| | ) | **CIVIL ACTION NO:-** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **CRACKER BARREL OLD COUNTRY STORE, INC., and TRACIE GRAVES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW,** Plaintiff Latoya Johnson (formerly known as Latoya Render) ("Ms. Johnson" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendants Cracker Barrel Old Country Store, Inc. ("Cracker Barrel" or "the Company") and Tracie Graves ("Graves") (collectively, "Defendants"), and in support states as follows:

## I. NATURE OF THE ACTION

1. This is an action for declaratory relief, compensatory and punitive damages, back pay, front pay, and other equitable relief brought by Plaintiff against Defendants for race discrimination, retaliation, hostile work environment, and failure to promote in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and for race discrimination and retaliation in violation of 42 U.S.C. § 1981 ("§ 1981").

2. Plaintiff, an African-American woman, worked for Cracker Barrel for approximately four years, achieving the highest internal performance certification ("PAR 4") available to a server and an additional designation as a Server Trainer. Despite this record, Plaintiff was subjected to unwanted, non-consensual physical contact by a White supervisor, disparate enforcement of dress-code policies, disparate work assignments, denial of advancement opportunities afforded to White co-workers, and a retaliatory reduction in her scheduled hours after she publicly complained of race discrimination.

3. Rather than address the conduct of the supervisor involved, Cracker Barrel offered to transfer Plaintiff to a different store, leaving the supervisor in place and leaving Plaintiff to work in an environment she reasonably perceived as hostile and unsafe.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), and over Plaintiff's § 1981 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

5. This Court has supplemental jurisdiction over any related state-law claims, if any are asserted, pursuant to 28 U.S.C. § 1367(a), as such claims arise from the same case or controversy as Plaintiff's federal claims.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within this District, at Cracker Barrel's store located at 4800 Doris Pate Drive, Tuscaloosa, Alabama 35405, and the employment records relevant to such practices are maintained and administered in this District.

## III. PARTIES

7. Plaintiff Latoya Johnson is an African-American woman and a resident of Duncanville, Alabama, within this District. At all times relevant to this Complaint, Plaintiff was an "employee" of Cracker Barrel within the meaning of Title VII, 42 U.S.C. § 2000e(f).

8. Defendant Cracker Barrel Old Country Store, Inc. is a corporation authorized to do business in the State of Alabama and operates a restaurant location at 4800 Doris Pate Drive, Tuscaloosa, Alabama 35405 ("the Tuscaloosa store" or "Store #272"), among numerous other locations. At all times relevant to this Complaint, Cracker Barrel employed more than 500 employees and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

9. Defendant Tracie Graves was, at all times relevant to this Complaint, employed by Cracker Barrel as a Shift Leader/Grill Cook at the Tuscaloosa store and functioned as a supervisor with authority over Plaintiff's day-to-day work conditions. Graves is sued in her individual capacity for purposes of Plaintiff's claims under 42 U.S.C. § 1981.

## IV. ADMINISTRATIVE EXHAUSTION OF TITLE VII CLAIMS

10. On or about May 9, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Birmingham District Office, alleging race discrimination and retaliation by Cracker Barrel, which was assigned EEOC Charge No. 420-2025-02998 (the "Charge").

11. Cracker Barrel submitted a Position Statement in response to the Charge on or about September 3, 2025, denying Plaintiff's allegations, and Plaintiff, through counsel, submitted a Rebuttal addressing and disputing Cracker Barrel's Position Statement.

12. Plaintiff has fulfilled all conditions precedent to filing this action and is filing this action within 90 days of receiving her Notice of Right to Sue as required by 42 U.S.C. § 2000e(f)(1). See attached Exhibit 1.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment History and Performance

13. Plaintiff began her employment with Cracker Barrel on or about March 22, 2021, as a server at store #561 in LaGrange, Georgia, and transferred to the Tuscaloosa store on or about May 28, 2021.

14. During her employment, Plaintiff achieved PAR 4 status, the highest level attainable under Cracker Barrel's Personal Achievement Responsibility program and was designated a Server Trainer beginning on or about June 2, 2023.

15. Prior to the events described in this Complaint, Plaintiff's personnel file reflected only a single item of formal discipline in nearly four and one-half years of employment: an August 6, 2024 verbal warning for a single instance of tardiness.

16. Beginning in approximately December 2024, Plaintiff's General Manager, Rhonda Hammond ("GM Hammond"), began entering confidential "Anytime Feedback" notations into Plaintiff's personnel file relating to Plaintiff's childcare-related absences and family obligations, including entries dated December 16, 2024, January 13, 2025, January 20, 2025, and February 11, 2025. These entries were marked "Confidential: Not Shared with Feedback Recipient," such that Plaintiff was never informed they were being created.

17. Beginning in January and February 2025, the same period during which GM Hammond was logging the confidential negative entries described above, Plaintiff's scheduled hours materially declined. Plaintiff, who had regularly worked five to six shifts per week totaling approximately thirty or more hours, was reduced to as few

as three to four shorter shifts per week, with some shifts beginning as late as 10:00 a.m. rather than her customary 8:30 a.m. start time, and some shifts lasting only three to four hours. By the week of March 15, 2025, Plaintiff's final scheduled shift, on March 19, 2025, totaled only 4.13 hours.

**B. The March 12, 2025 Earring Incident**

18. On or about March 12, 2025, GM Hammond and Associate Manager Chelsie Caine summoned Plaintiff to the manager's office regarding earrings Hammond deemed too large under Cracker Barrel's dress-code policy.

19. Plaintiff disputed that her earrings violated the dress code. When Plaintiff declined to remove the earrings to allow management to physically measure them against a coin, Plaintiff was instructed to clock out and sent home, resulting in the loss of an entire shift's wages and gratuities.

20. On information and belief, Cracker Barrel has not applied comparable consequences to White employees who disputed or briefly failed to comply with dress-code corrections. For example, a White male employee (identified in Cracker Barrel's own records by the initials "L.J.") was asked to remove a bracelet, complied, and continued working his shift without discipline or loss of pay.

**C. The March 19, 2025 Non-Consensual Touching Incident**

21. On March 19, 2025, Plaintiff asked Defendant Graves, then working as Shift Leader/Grill Cook, to check her uniform for compliance. Graves initially indicated that Plaintiff's pants were acceptable.

22. After further observation, Graves determined that Plaintiff's pants were impermissible under the dress code. Without Plaintiff's consent, Graves physically grabbed and pulled on the knee area of Plaintiff's pants.

23. Plaintiff did not consent to being touched by Graves and immediately objected, stating words to the effect of "don't touch me." Plaintiff's objection to this unwanted physical contact constitutes protected opposition activity under Title VII's opposition clause.

24. Cracker Barrel's own written policies including its Employee Handbook and dress-code guidelines contain no provision authorizing a supervisor to physically touch, grab, or pull on an employee's clothing or body as a means of enforcing the dress code.

25. Following this incident, Plaintiff clocked out and went home. Plaintiff has not returned to work at the Tuscaloosa store since March 19, 2025.

26. Rather than discipline, remove, or restrict Graves's continued supervisory contact with Plaintiff, Cracker Barrel's response to Plaintiff's complaint was to offer to transfer Plaintiff herself, not Graves, to a different store location in Birmingham,

Alabama, thereby displacing the complainant rather than addressing the individual whose conduct gave rise to the complaint.

**D. Disparate Treatment in Work Assignments**

27. Throughout her employment, Plaintiff was required to perform certain tasks that White servers at the Tuscaloosa store were not required to perform.

28. Plaintiff was also required to have a co-worker assist her whenever she served a party of ten or more guests, a requirement that was not imposed on similarly situated White servers serving parties of comparable size.

**E. Denial of Promotional Opportunities**

29. Despite achieving PAR 4 status and a Server Trainer designation objective indicator that Plaintiff was among the most experienced and capable servers at the Tuscaloosa store, Plaintiff was not informed of, encouraged toward, or afforded equal access to supervisory promotional opportunities that were made available to similarly or less qualified White co-workers.

30. All scheduling, evaluation, and promotional decisions affecting Plaintiff during the relevant period were made or influenced by GM Hammond, the same manager responsible for the disparate treatment described above and for building the confidential negative record concerning Plaintiff described in Paragraph 16.

**F. Plaintiff's Protected Activity and Cracker Barrel's Retaliatory Response**

31. On or about March 13, 2025, Plaintiff posted a video from the Tuscaloosa store publicly alleging that she had been subjected to race discrimination. Cracker Barrel's Employee Relations department learned of this video and opened an internal investigation on or about that same date.

32. Cracker Barrel was therefore on actual notice of Plaintiff's discrimination complaint no later than March 13, 2025, six days before the March 19, 2025 incident described above.

33. The reduction in Plaintiff's scheduled hours described in Paragraph 16, which began before Plaintiff's March 13, 2025 complaint and continued thereafter, together with Cracker Barrel's response of offering to transfer Plaintiff rather than address Graves's conduct, constitute retaliatory adverse actions causally connected to Plaintiff's protected activity.

34. By letter dated June 16, 2025, Cracker Barrel notified Plaintiff that it had investigated her concerns and "were unable to establish that a violation of our discrimination policy occurred," and further advised that if Plaintiff did not contact the Company by June 30, 2025 regarding her intent to return to work, Cracker Barrel would administratively separate her employment as a resignation.

35. Plaintiff's non-return to the Tuscaloosa store reflects the reasonable response of an employee who was touched without consent by a supervisor, whose complaint

was met with an offer to relocate her rather than protect her, and who had experienced months of disparate treatment and a retaliatory reduction in hours not a voluntary abandonment of her position.

## VI. CAUSES OF ACTION

### COUNT - I

**Race Discrimination in Violation of Title VII (Disparate Treatment)**

*(Against Defendant Cracker Barrel)*

36. Plaintiff incorporates by reference paragraphs 1-35 as if fully set forth herein.

37. Plaintiff is African-American and is a member of a protected class under Title VII.

38. Cracker Barrel subjected Plaintiff to adverse employment actions, including but not limited to disparate disciplinary consequences for alleged dress-code infractions, unequal work assignments, and reduced scheduled hours, because of her race.

39. Similarly situated White employees, including but not limited to the comparator identified by initials "L.J.," were treated more favorably than Plaintiff under nearly identical or comparable circumstances.

40. Cracker Barrel's proffered justifications for its treatment of Plaintiff are pretextual and not the true reasons for its actions.

41. As a direct and proximate result of Cracker Barrel's discriminatory conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

**COUNT - II**

**Retaliation in Violation of Title VII**

*(Against Defendant Cracker Barrel)*

42. Plaintiff incorporates by reference paragraphs 1-35 as if fully set forth herein.

43. Plaintiff engaged in protected activity under Title VII's opposition clause by publicly objecting to race discrimination on or about March 13, 2025, and by verbally objecting to non-consensual touching by Graves on March 19, 2025.

44. Cracker Barrel had actual notice of Plaintiff's protected activity no later than March 13, 2025.

45. Following Plaintiff's protected activity, Cracker Barrel subjected Plaintiff to adverse actions, including a continued and worsened reduction in her scheduled hours and an offer to transfer Plaintiff rather than the offending supervisor to a different store location.

46. A causal connection exists between Plaintiff's protected activity and the adverse actions taken against her, including through temporal proximity and the pattern of conduct described above.

47. As a direct and proximate result of Cracker Barrel's retaliatory conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

## **COUNT - III**

### **Hostile Work Environment in Violation of Title VII**

*(Against Defendant Cracker Barrel)*

48. Plaintiff incorporates by reference paragraphs 1-35 as if fully set forth herein.

49. Plaintiff was subjected to unwelcome conduct because of her race, including non-consensual physical contact by a supervisor, disparate enforcement of workplace policies, and disparate work assignments and scheduling.

50. This conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment, as judged both from the perspective of a reasonable person in Plaintiff's position and from Plaintiff's own subjective perception.

51. A basis exists for holding Cracker Barrel liable for this hostile work environment, in that the conduct was undertaken by, or with the knowledge and acquiescence of, individuals in supervisory or managerial roles, and Cracker Barrel failed to take prompt and adequate remedial action, instead offering to transfer Plaintiff rather than address the supervisor's conduct.

52. As a direct and proximate result of the hostile work environment, Plaintiff has suffered and continues to suffer emotional distress, humiliation, lost wages and benefits, and other damages.

## COUNT - IV

### Failure to Promote in Violation of Title VII

*(Against Defendant Cracker Barrel)*

53. Plaintiff incorporates by reference paragraphs 1-35 as if fully set forth herein.

54. Plaintiff was qualified for advancement to a supervisory role by virtue of her PAR 4 status, her Server Trainer designation, and her years of experience.

55. Cracker Barrel failed to inform Plaintiff of, encourage her toward, or provide her equal access to supervisory promotional opportunities that were made available to similarly or less qualified White co-workers.

56. Cracker Barrel's asserted justification that Plaintiff never formally applied for or expressed interest in a supervisory role does not excuse its failure to inform and encourage Plaintiff regarding such opportunities on the same basis as her White co-workers, and is pretextual.

57. As a direct and proximate result of Cracker Barrel's failure to promote Plaintiff, Plaintiff has suffered lost wages, benefits, and career advancement, and other damages.

## COUNT - V

**Race Discrimination in Violation of 42 U.S.C. § 1981**

*(Against Defendants Cracker Barrel and Graves)*

58. Plaintiff incorporates by reference paragraphs 1-35 as if fully set forth herein.

59. Section 1981 guarantees all persons the same right to make and enforce contracts, including employment contracts, as is enjoyed by White citizens, and prohibits intentional race discrimination in the terms and conditions of employment.

60. Defendants intentionally discriminated against Plaintiff on the basis of her race with respect to the terms, conditions, and privileges of her employment, including through the conduct described above.

61. Defendant Graves personally participated in and was the direct actor responsible for the non-consensual physical contact described herein, undertaken in the course of enforcing workplace policy against Plaintiff on account of her race.

62. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, and other damages.

63. Defendants' conduct was undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

**COUNT - VI**

**Retaliation in Violation of 42 U.S.C. § 1981**

*(Against Defendants Cracker Barrel and Graves)*

64. Plaintiff incorporates by reference paragraphs 1-35 as if fully set forth herein.

65. Plaintiff engaged in activity protected under § 1981 by opposing race discrimination, including her March 13, 2025 public complaint and her March 19, 2025 objection to non-consensual touching by Graves.

66. Following this protected activity, Defendants took adverse action against Plaintiff, including the continued reduction of her scheduled hours and the offer to transfer Plaintiff rather than address the supervisor whose conduct prompted her complaint.

67. A causal connection exists between Plaintiff's protected activity and the adverse actions taken against her.

68. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, and other damages.

69. Defendants' conduct was undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

A. Declare that the acts and practices complained of herein are in violation of Title VII and 42 U.S.C. § 1981;

B. Award Plaintiff back pay, including lost wages, tips, and benefits, with prejudgment interest;

C. Award Plaintiff front pay in lieu of reinstatement, or alternatively, order Plaintiff's reinstatement to a comparable position;

D. Award Plaintiff compensatory damages for emotional distress, humiliation, and other non-pecuniary losses in an amount to be determined at trial;

E. Award Plaintiff punitive damages as permitted by law;

F. Award Plaintiff her reasonable attorneys' fees, expert fees, and costs of this action pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988;

G. Award pre-judgment and post-judgment interest as allowed by law; and

H. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**/s/ Richard A. Rice**
Richard A. Rice
**/s/ Spencer E. Bowley**
Spencer Bowley

THE RICE FIRM, LLC
N. 115 Richard Arrington Jr. Blvd.
Birmingham, AL 35203
Telephone: (205) 618-8733
rrice@rice-lawfirm.com
spencer@rice-lawfirm.com
*Counsel for Plaintiff Latoya Johnson*